# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL D. CASEY,<br>individually and as administrator of the<br>ESTATE OF PATRICK D. CASEY,<br>4 Rolling Brook Drive<br>Clifton Park, NY 12065,<br><br>    and<br><br>ABIGAIL O. CASEY<br>4 Rolling Brook Drive<br>Clifton Park, NY 12065,<br><br>    Plaintiffs.<br><br>    v.<br><br>JASON WARD<br>20336 Ashcroft Terrace<br>Sterling, Virginia 20165,<br><br>JUSTIN RUARK<br>6722 W. Wakefield Drive, Apt C-1<br>Alexandria, VA 22307,<br><br>BRIAN GIBLIN<br>236 Par Drive<br>Williamsburg, VA 23188<br><br>MCDONALDS CORPORATION<br>2111 McDonald's Dr.<br>Oak Brook, Illinois 60523,<br><br>    Serve: McDonald's Corporation<br>           c/o Prentice-Hall Corporation<br>           System, Inc.<br>           2711 Centerville Road Suite 400<br>           Wilmington, DE 19808<br><br>KYUNG RHEE, d/b/a RHEE'S MCDONALDS<br>1916 M Street NW<br>Washington,  D.C. 20036, | ) Civ. No. 1:13-cv-1452 (RJL) |

19TH & K INC, d/b/a OZIO                          )
1813 M Street NW                                 )
Washington, D.C. 20036,                          )
                                                 )
     Serve:  Ozio                             )
         c/o Professional Reg. Agents Inc.  )
         2600 Virginia Avenue, N.W.,        )
         Suite 1112                         )
         Washington, D.C. 20037             )
                                                 )
R A H OF WASHINGTON, D.C., INC., d/b/a            )
CAMELOT                                           )
1823 M Street NW                                 )
Washington, D.C. 20036,                          )
                                                 )
     Serve:  Camelot                          )
         c/o Professional Reg. Agents Inc.  )
         2600 Virginia Avenue, N.W.,        )
         Suite 1112                         )
         Washington, D.C. 20037             )
                                                 )
GOOD LIFE 1831M LLC d/b/a MIGHTY PINT             )
1831 M Street NW                                 )
Washington, D.C. 20009,                          )
                                                 )
     Serve:  Mighty Pint                      )
         c/o Corporation Service Company    )
         1090 Vermont Ave NW                )
         Washington, D.C. 20005             )
                                                 )
DC IRISH LLC, d/b/a SIGN OF THE WHALE             )
1825 M Street NW                                 )
Washington, D.C. 20036,                          )
                                                 )
     Serve:  Sign of the Whale                )
         c/o Blumbergexcelsior Corporate    )
         Services Inc.                      )
         1100 H St NW                       )
         Suite 840                          )
         Washington, D.C. 20005             )
                                                 )
1900 M RESTAURANT ASSOCIATES, INC,               )
d/b/a RUMORS RESTAURANT                           )
1900 M St NW                                      )
Washington D.C. 20036,                           )
                                                 )

Serve: Rumors Restaurant     )
        c/o JECCA Corporate Services Inc.  )
        1225 19th Street NW     )
        Suite 320     )
        Washington, D.C. 20036     )
        )
JOHN DOES 1-10 (*being the fictitious names of*  )
*persons who are not presently known to Plaintiff),*  )
        )
   and     )
        )
ABC CORPORATIONS 1-10 (*being fictitious*  )
*entities who are not presently known to Plaintiff),*  )
        )
   Defendants.     )
_____ )

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, Paul Casey and Abigail Casey, by their attorneys, allege for their Amended Complaint herein:

## PRELIMINARY STATEMENT

1.     This case involves the obscene and brutal attack by Defendants Jason Ward, Justin Ruark, and Brian Giblin resulting in the death of Patrick Casey.  The corporate Defendants are liable to the Plaintiffs for violating the laws of the District of Columbia by serving alcohol to the individual Defendants all of whom were visibly intoxicated at the time of serving; and for the failure to provide a safe and secure business environment, which resulted in the death of Patrick Casey.  Patrick Casey was a combat veteran who had recently finished a tour of duty in Afghanistan.

Plaintiffs, through their undersigned counsel hereby allege the following:

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 as this matter involves a controversy between citizens of different states, and the matter in

controversy exceeds the sum of seventy five thousand dollars ($75,000.00), exclusive of interests and costs.

3.      Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2) as the acts and/or omissions alleged in this Complaint occurred in the District of Columbia. Moreover, the Defendants are found in, reside, or transact business in the District of Columbia.

## PARTIES AND RELEVANT PERSONS

4.      Plaintiff, Paul Casey, Administrator of the Estate of Patrick Casey, is the surviving father of the decedent, Patrick Casey, and is an adult citizen of the State of New York, residing at 4 Rolling Brook Drive, Clifton Park, NY 12065. Paul Casey is bringing this case in his personal capacity and on behalf of the decedent's next of kin.

5.      At all times material herein, decedent, Patrick Casey – a combat veteran, having served in Afghanistan – was 33 years old and an adult citizen of the State of New York.  Patrick Casey filed state and federal income taxes in the state of New York in 2011.  All income earned by Patrick Casey in 2011 was reported for tax purposes in the state of New York.  At all times relevant herein, Patrick Casey maintained all of his bank accounts in the state of New York.  Similarly, at all relevant times, Patrick Casey's IRA and 401k accounts were maintained in the state of New York.   At all times material herein, Patrick Casey had a driver's license issued by the state of New York.  At all times material herein, Patrick Casey was registered to vote in the State of New York.  Further, Patrick Casey was a member of St. Edward the Confessor Parish located in Clifton Park, New York.  The Letters of Administration issued for Patrick Casey's estate by the Saratoga County Surrogate Court in New York, provide that Patrick Casey's domicile was in Clifton Park, New York.  In August 2011, Patrick Casey enrolled in a masters degree program at the Elliot School of the George Washington University.  During his brief

enrollment at the George Washington University, Patrick Casey's permanent address remained 4 Rolling Brook Drive, Clifton Park, NY 12065. Patrick Casey's student loans for his masters program were administered in the state of New York.  Moreover, while enrolled at the George Washington University, Patrick Casey was eligible for, and applied for, New York state unemployment benefits as an individual enrolled in a "training program" (the George Washington University Master's program) approved by the state of New York.  At all times material herein, Patrick intended to return to New York.

6.      Plaintiff, Abigail Casey, is the surviving mother of the decedent, Patrick Casey, and is an individual and an adult citizen of the State of New York, residing at 4 Rolling Brook Drive, Clifton Park, NY 12065.

7.      Upon information and belief, Defendant Jason Ward was, at all times relevant herein, an adult citizen of the Commonwealth of Virginia and caused the tortious injury of Patrick Casey in the District of Columbia by an act or omission in the District of Columbia.

8.      Upon information and belief, Defendant Justin Ruark is, and was at all times relevant herein, an adult citizen of the Commonwealth of Virginia and caused the tortious injury of Patrick Casey in the District of Columbia by an act or omission in the District of Columbia.

9.      Upon information and belief, Defendant Brian Giblin is, and was at all times relevant herein, an adult citizen of the Commonwealth of Virginia and caused the tortious injury of Patrick Casey in the District of Columbia by an act or omission in the District of Columbia.

10.      Upon information and belief, Defendant Kyung Rhee, d/b/a Rhee's McDonald's (hereinafter "M Street McDonald's"), is a Washington, D.C. based sole proprietorship or other business entity organized and existing under and by virtue of the laws of the District of Columbia, with its principal place of business located at 1916 M Street, NW, Washington, D.C. 20036.  At

all times relevant herein, Defendant M Street McDonald's was the owner and/or operator of the McDonald's restaurant located at 1916 M Street NW, Washington, D.C. 20036 and carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant M Street McDonald's was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant M Street McDonald's and Defendant McDonald's Corporation.

11.     Defendant McDonalds Corporation (hereinafter "McDonald's Corp.") at all times relevant herein is a Delaware corporation with its principal place of business located at 2111 McDonald's Drive, Oak Brook, IL 60532.  McDonald's Corp. conducts substantial business activities within the District of Columbia.  In addition, at all times relevant herein, Defendant M. Street McDonald's served as the actual agent and/or the apparent agent for McDonald's Corp.

12.     Defendant 19th & K Inc., d/b/a Ozio (hereinafter "Ozio"), is a corporation organized and existing under and by virtue of the laws of the District of Columbia, with its principal place of business located at 1900 M St. NW, Washington, D.C. 20036.  At all times relevant herein, Defendant Ozio carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant Ozio was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Ozio.  At all times relevant herein, Defendant Ozio was the owner of a liquor license, purchased with the approval of the Alcoholic Beverage Regulation Administration ("ABRA"), and sold and dispensed alcoholic beverages under regulations imposed by ABRA and Title 25 of the District of Columbia Code.

13.     Defendant R A H of Washington, D.C. Inc., d/b/a Camelot (hereinafter "Camelot"), is a corporation organized and existing under and by virtue of the laws of the District of

Columbia, with its principal place of business located at 1823 M Street NW, Washington, D.C. 20036.  At all times relevant herein, Defendant Camelot carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant Camelot was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Camelot.  At all times relevant herein, Defendant Camelot was the owner of a liquor license, purchased with the approval of the Alcoholic Beverage Regulation Administration ("ABRA"), and sold and dispensed alcoholic beverages under regulations imposed by ABRA and Title 25 of the District of Columbia Code.

14.     Defendant Good Life 1831M LLC, d/b/a Mighty Pint (hereinafter "Mighty Pint"), is a limited liability company organized and existing under and by virtue of the laws of the District of Columbia, with its principal place of business located at 1831 M Street NW, Washington, D.C. 20009.  At all times relevant herein, Defendant Mighty Pint carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant Mighty Pint was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Mighty Pint.  At all times relevant herein, Defendant Mighty Pint was the owner of a liquor license, purchased with the approval of the Alcoholic Beverage Regulation Administration ("ABRA"), and sold and dispensed alcoholic beverages under regulations imposed by ABRA and Title 25 of the District of Columbia Code.

15.     Defendant DC Irish LLC, d/b/a Sign of the Whale (hereinafter "Sign of the Whale") is a limited liability company organized and existing under and by virtue of the laws of the District of Columbia with its principal place of business located at 1825 M Street NW,

Washington, D.C. 20036.  At all times relevant herein, Defendant Sign of the Whale carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant Sign of the Whale was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Sign of the Whale.   At all times relevant herein, Defendant Sign of the Whale was the owner of a liquor license, purchased with the approval of the Alcoholic Beverage Regulation Administration ("ABRA"), and sold and dispensed alcoholic beverages under regulations imposed by ABRA and Title 25 of the District of Columbia Code.

16.     Defendant 1900 M Restaurant Associates, Inc., d/b/a Rumors Restaurant (hereinafter "Rumors")[1] is a corporation organized and existing under and by virtue of the laws of the District of Columbia, with its principal place of business located at 1900 M Street NW, Washington, D.C. 20036.  At all times relevant herein, Defendant Rumors carried on substantial business activities within the District of Columbia.  At all times relevant herein, Defendant Rumors was acting by and through its agents, servants, workers, and employees, all of whom were acting within the course and scope of their employment, for and on behalf of Rumors.  At all times relevant herein, Defendant Rumors was the owner of a liquor license, purchased with the approval of the Alcoholic Beverage Regulation Administration ("ABRA"), and sold and dispensed alcoholic beverages under regulations imposed by ABRA and Title 25 of the District of Columbia Code.

17.     Upon information and belief, Defendants John Does 1-10 are fictitious names of persons who are not presently known to Plaintiffs who may be liable for a portion or all of the

---

[1]     On November 25, 2013, 1900 M Restaurant Associates Inc., d/b/a Rumors, filed a suggestion of bankruptcy, resulting in an automatic stay of all proceedings brought against it.  *See* ECF No. 32.  Consistent with 11 U.S.C. § 362, Plaintiffs will submit a stipulation staying this action against Defendant Rumors.

damage sustained by Patrick Casey and/or Plaintiffs.

18.     Upon information and belief, Defendants ABC Corporations 1-10 are fictitious entities whose names are not presently known to Plaintiffs that may be alter egos of Defendants or have caused damage to Patrick Casey and/or Plaintiffs.

19.     Under the law in the District of Columbia, Defendants in this matter are jointly and severally liable to Plaintiffs for the injuries suffered and sustained by the decedent, Patrick Casey.

20.     The names and last known addresses of all persons who may be entitled by law to recover damages, as well as the relationship to the decedent, Patrick Casey, are as follows:

    a.   Paul Casey; Father; 4 Rolling Brook Drive, Clifton Park, NY 12065.

    b.   Abigail Casey; Mother; 4 Rolling Brook Drive, Clifton Park, NY 12065.

21.     No action was brought by Patrick Casey during his lifetime for the injuries or damages alleged in this civil action Complaint.

## FACTS COMMON TO ALL COUNTS

**Defendants Jason Ward, Justin Ruark, and Brian Giblin Were "Bar Hopping" and Exceedingly Intoxicated Prior to the Assault and Battery of Patrick Casey**

22.     Plaintiffs hereby incorporate by reference all paragraphs above of this Complaint, the same as if set forth at length hereinafter.

23.     On the evening of September 22, 2011 and into the early morning hours of September 23, 2011, Defendants Jason Ward, Justin Ruark, and Brian Giblin, were patrons of the following drinking establishments: Ozio (located at 1823 M Street NW, Washington, D.C.); Camelot (located at 1823 M Street NW, Washington, D.C.); Mighty Pint (located at 1831 M Street NW, Washington, D.C. 20009); Sign of the Whale (located at 1825 M Street NW, Washington, D.C.); and Rumors located at 1900 M St. NW, Washington, D.C. 20036

(collectively "Defendant Drinking Establishments").  While at the Defendant Drinking Establishments, Defendants Jason Ward, Justin Ruark, and Brian Giblin consumed alcoholic beverages served to them by the Defendant Drinking Establishments' employees, who were acting within the scope of their authority as employees of the Defendant Drinking Establishments.

24.     Each Defendant Drinking Establishment, by and through its agents, servants, workers and employees, served and continued to serve alcoholic beverages to Defendants Jason Ward, Justin Ruark, and Brian Giblin, while they all visibly appeared to be intoxicated, and were in fact intoxicated. Defendants Jason Ward, Justin Ruark, and Brian Giblin, who were "bar hopping" during the time at issue, consumed the alcohol served to them by each Defendant Drinking Establishment.

25.     During the time at issue, Defendant Sign of the Whale had a number of drink specials and practices that were intentionally designed to get its patrons heavily intoxicated.  One such special included serving its patrons 48-ounce mixed drinks.  Specifically, at 2:04 PM on September 22, 2011, Sign of the Whale transmitted a Twitter message to the general public announcing its drink special of the night—"Whale Pail night."  A flyer produced by Defendant Sign of Whale invited its patrons on Whale Pail Night to "Let's Get Whaled" by serving its patrons "48 oz cocktails."  A picture on the website of Sign of the Whale taken on September 22, 2011 shows one of its bartenders with the caption, "Ask Shana for her famous Whale Pail!"  All night on September 22, 2011, Defendant Sign of the Whale served its patrons "48 oz cocktails" as part of its "Let's Get Whaled" promotion.

26.     In addition to its "Let's Get Whaled" promotion on September 22, 2011, Defendant Sign of the Whale also had three representatives present from Jägermeister on

September 22, 2011, handing out free giveaways, including shots of Jägermeister to the patrons of Defendant Sign of the Whale. By serving its patrons 48-ounce mixed drinks and free Jägermeister shots, Defendant Sign of the Whale acted negligently and with ill will, recklessness, wantonness, oppressiveness and a willful disregard of Plaintiffs' rights warranting punitive damages.

27.     Similarly, during all times material hereto, Defendant Mighty Pint had a number of drink specials and practices intentionally designed to get its patrons heavily intoxicated. On September 22, 2011, Mighty Pint announced to the general public on its Twitter account, "Flip Night Tonight…Win the coin toss against your bartender for FREE rail drinks and draft." The flyer for the drink special announces in very large, bold font, "DRINK FOR FREE!" The flyer continues, "Bartenders flip a Quarter for Every Drink Guess RIGHT…YOUR DRINK IS FREE!" Accordingly, between "8:00 PM – Midnight" on September 22, 2011, Mighty Pint served its patrons free drinks. By serving its patrons free drinks with the intent of getting them intoxicated, Defendant Mighty Pint acted negligently with ill will, recklessness, wantonness, oppressiveness and a willful disregard of Plaintiffs' rights warranting punitive damages.

28.     According to an employee of Ozio, Defendants Jason Ward, Justin Ruark, and Brian Giblin were already "drunk" when they arrived at Ozio at 1:58AM on September 23, 2011. The Ozio employee further stated that the "tallest one" of Defendants Jason Ward, Justin Ruark, and Brian Giblin was "drunk and out of control." The Ozio employee also commented that one of Defendants (either Jason Ward, Justin Ruark, or Brian Giblin) is "aggressive when [he] is drinking."

29.     In addition, an Ozio employee stated that based on his "observation of their behavior, [Defendants Jason Ward, Justin Ruark, and Brian Giblin] had been drinking and were

intoxicated" prior to arriving at Ozio – the last Defendant Drinking Establishment visited by Defendants Jason Ward, Justin Ruark and Brian Giblin during the time at issue.

30.     According to the Ozio employee, Defendants Jason Ward, Justin Ruark, and Brian Giblin had been "bar-hopping" on the evening of September 22, 2011 and had been to "Camelot, Sign of the Whale, [and] Rumors" prior to arriving at Ozio.  As admitted by Defendant Jason Ward, Defendants Jason Ward, Justin Ruark, and Brian Giblin had also been at the drinking establishment owned and operated by Defendant Mighty Pint.  Defendants Jason Ward, Justin Ruark, and Brian Giblin were served and consumed alcoholic beverages by Defendants Camelot, Sign of the Whale, Rumors, and Ozio when they were visibly intoxicated.

31.     Defendants Brian Giblin and Justin Ruark both admit that they were drinking at several bars in the M Street area, where each Defendant Drinking Establishments is located, with Defendant Jason Ward.

32.     By serving alcohol to Defendants Jason Ward, Justin Ruark, and Brian Giblin when they were intoxicated and appeared to be intoxicated, Defendant Drinking Establishments (Ozio, Camelot, Mighty Pint, Sign of the Whale, and Rumors) violated the law of the District of Columbia.

**Defendants' Assault and Battery of Mr. Casey at McDonald's**

33.     Defendants Jason Ward, Justin Ruark, and Brian Giblin arrived at the McDonald's restaurant owned and operated by Defendant M Street McDonald's, and located at 1916 M St NW, Washington, D.C. at approximately 2:21 am on September 23, 2011.

34.     Defendant Drinking Establishments are all located within one block of Defendant M Street McDonald's.

35.     While waiting in line to order food at the McDonald's restaurant, Defendants

Jason Ward, Justin Ruark, and Brian Giblin were intoxicated, which caused them to engage in rowdy and aggressive behavior, both verbally and physically.  Other patrons waiting in line consciously and visibly kept a safe distance from Defendants Jason Ward, Justin Ruark, and Brian Giblin.

36.     At approximately 2:26 am, while still waiting in line, Defendant Jason Ward attempted to touch a female patron in an inappropriate and unwelcoming manner.

37.     Decedent Patrick Casey arrived at Defendant M Street McDonald's restaurant located at 1916 M St NW, Washington, D.C. at approximately 2:23 am on September 23, 2011 to meet his friends David Lindsey and Claire Jun who were already at the restaurant.  Mr. Casey located his friends immediately upon arriving and interacted only with Mr. Lindsey and Ms. Jun while they waited for their food.  After Mr. Lindsey and Ms. Jun received their food, Mr. Casey sat with Mr. Lindsey and Ms. Jun while they ate their food. Mr. Casey conversed only with Mr. Lindsey and Ms. Jun, and with the patrons at the table next to them.

38.     At approximately 2:41 am, while at the McDonald's restaurant and without any provocation, Defendants Jason Ward, Justin Ruark, and Brian Giblin initiated a verbal altercation with Patrick Casey's table.  All three Defendants remained exceedingly intoxicated prior to, and during this altercation.

39.     During the verbal altercation, Mr. Lindsey attempted to leave the restaurant in an effort to flee the encounter with Defendants Ward, Ruark, and Giblin.  Pushing Mr. Casey aside, Defendant Brian Giblin quickly chased Mr. Lindsey to the door of the restaurant.  At the door of the McDonald's restaurant, Defendant Brian Giblin then pushed Mr. Lindsey.  At this time, Patrick Casey stepped in between Defendant Giblin and Mr. Lindsey to defuse the situation. Defendants Ward, Giblin, and Ruark then surrounded Patrick Casey, whose back was to the door,

causing Patrick Casey to be placed in apprehension of a harmful or offensive contact by Defendants Ward, Giblin, and Ruark.

40.    While Patrick Casey attempted to defuse the situation, and without any provocation by Mr. Casey or Mr. Lindsey, Defendant Jason Ward violently attacked Mr. Casey by delivering a "sucker punch" to his head, causing Patrick Casey to fall to the ground in a state of extreme and profound anguish.  Mr. Casey's head then struck the concrete sidewalk just outside the McDonald's restaurant.

41.    Defendant Jason Ward was only able to deliver the "sucker punch" to Patrick Casey with the substantial assistance of Defendants Giblin and Ruark who were simultaneously assaulting Patrick Casey by placing Mr. Casey in a fear or apprehension of being attacked by Defendants Giblin and Ruark during the physical altercation.

42.    The impact of the "sucker punch" by Defendant Jason Ward to Patrick Casey caused him to sustain severe head trauma, brain hemorrhaging, and unimaginable pain.

43.    Upon information and belief, Defendant Jason Ward, was/is a bodybuilder and a practitioner of the deadly martial art, Krav Maga.   Defendant Jason Ward was trained and skilled to deliver a deadly physical strike and did so purposefully to the unaware, Patrick Casey.

44.    Throughout their time at McDonald's, the verbal altercation and brutal attack of Mr. Casey, Defendants Jason Ward, Justin Ruark, and Brian Giblin were in an exceedingly inebriated condition.

45.    After violently attacking Patrick Casey, Defendants Jason Ward, Justin Ruark, and Brian Giblin fled the scene, leaving Patrick Casey in an unconscious state lying on the sidewalk. Defendants Ward, Ruark, and Giblin did not provide first aid or medical assistance to Patrick Casey, and did not call 911 to report the injuries suffered by Mr. Casey.  By attacking Mr. Casey

14

and by fleeing the scene before the police arrived, rather than providing any assistance to Mr. Casey, Defendants Ward, Giblin, and Ruark acted negligently with ill will, recklessness, wantonness, oppressiveness and a willful disregard of Plaintiffs' rights warranting punitive damages.

46.     After Mr. Casey was brutally assaulted, 911 was alerted and EMTs arrived.

47.     At the scene, EMTs found Mr. Casey in an unconscious state and transported Mr. Casey to the George Washington University Hospital, where he was admitted in critical condition, suffering from brain damage.

48.     At the George Washington University Hospital, medical personnel placed Patrick Casey into an induced coma and on life sustaining machines.  The medical personnel drilled a hole in Mr. Casey's skull to relieve pressure on his brain as a result of the swelling from the head trauma sustained by Mr. Casey.

49.     Despite the efforts of medical personnel, Patrick Casey was pronounced dead at 2:30 pm on September 27, 2011.  The autopsy report concluded that Mr. Casey's cause of death was the blunt impact injuries to Mr. Casey's head.

50.     Despite their undeniable knowledge that they beat Patrick Casey to death and that they were wanted by the police, Defendants Jason Ward, Justin Ruark, and Brian Giblin continued to evade the police and failed to take any responsibility for their actions.  The Defendants spoke to the police approximately one week after killing Patrick Casey, only after they were alerted that the police had identified them as the individuals who attacked Patrick Casey.  The evasion of the police by Defendants Ward, Giblin, and Ruark demonstrates that Defendants Ward, Giblin, and Ruark acted negligently with ill will, recklessness, wantonness, oppressiveness and a willful disregard of Plaintiff's rights warranting punitive damages.

51.     Defendants Ruark and Giblin admitted that they had been to several bars that night drinking just prior to the attack on Patrick Casey.  Likewise, Defendant Ward admitted that he had been to Camelot, Mighty Pint, Sign of the Whale, Ozio, and Rumors where Defendants Ward, Ruark, and Giblin consumed alcoholic beverages.

52.     Defendants Ruark and Giblin further stated that Defendant Ward admitted to punching Patrick Casey in the head, thereby delivering the deadly blow to Mr. Casey.

53.     March 18, 2013, or about, was the first time that Paul Casey and Abigail Casey knew, or could have known through the exercise of reasonable diligence: (1) the cause of Patrick Casey's injuries, and (2) the wrongdoing by any of the Defendants.  Prior to this date, the identity of all the Defendants and their wrongdoing was withheld from the Plaintiffs by the Metropolitan Police Department and the Defendants themselves, despite Plaintiffs' repeated attempts to obtain relevant information.

54.     As a direct result of the conduct of all Defendants, Patrick Casey sustained conscious pain and suffering and fear of impending death, serious and debilitating injuries to his head, severe brain trauma, and blunt force trauma to his head that directly resulted in his death; despair, despondency, anxiety, mental and emotional pain and suffering prior to his death; great physical pain, suffering and the loss of life's pleasures, past, present, and future; loss of earnings and wages and loss of earnings capacity, past, present and future; and hospital, medical and rehabilitation expenses, including medical equipment, supplies and other medical care and treatment before Mr. Casey's death.

### COUNT I
### WRONGFUL DEATH
### (Defendants Jason Ward, Justin Ruark, and Brian Giblin)

55.     Plaintiffs reallege and incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint as if fully set forth herein.

56.     Plaintiffs bring this action in their own right and on behalf of the wrongful death beneficiaries of Decedent, Patrick Casey, pursuant to D.C. Code § 16-2701.

57.     Defendants Jason Ward, Justin Ruark, and Brian Giblin violently attacked and assaulted the defenseless and unsuspecting Decedent, Patrick Casey, by first pushing Mr. Casey and then delivering a "sucker punch" to his head, thereby violating the law of the District of Columbia, by intending to cause a harmful or offensive contact with Patrick Casey, while also placing Mr. Casey in an imminent apprehension of such a contact, and by contacting Mr. Casey in harmful manner resulting in physical pain and the physical impairment of his body.

58.     Defendants Jason Ward, Justin Ruark, and Brian Giblin intended to cause a harmful contact to the body of Decedent, Patrick Casey, which directly resulted in harmful contact with Decedent's body and his untimely death.

59.     Defendants Jason Ward, Justin Ruark, and Brian Giblin owed a duty to Decedent to exercise due care. Defendants Jason Ward, Justin Ruark, and Brian Giblin breached that duty when they pushed and punched Patrick Casey who was defenseless and unsuspecting of the attack.

60.     Defendants Jason Ward, Justin Ruark, and Brian Giblin acted carelessly and negligently, with excessive and unreasonable force, and without due care for the reasons articulated in this Complaint.

61.     Defendants Jason Ward, Justin Ruark, and Brian Giblin were careless, negligent, willful, wanton, and reckless, and breached their duty to exercise due care generally and in the following specific respects and without limitation:

      a.   Imbibing alcohol to the point at which they were exceedingly inebriated;

      b.   Initiating a verbal altercation with Patrick Casey;

c.  Initiating a physical altercation with David Lindsey;

d.  Assaulting Patrick Casey;

e.  Utilizing excessive force upon Patrick Casey;

f.  Failing to cease physically assaulting Patrick Casey;

g.  Striking Patrick Casey with fists;

h.  Failing to attempt to retreat from any perceived threat;

i.  Failing to use appropriate, proportionate, and/or reasonable force;

j.  Misunderstanding the situation and erroneously perceiving a threat of serious bodily harm;

k.  Striking Patrick Casey when force was neither required nor permitted;

l.  Striking Patrick Casey with a closed fist in the head when he was not looking or suspecting the strike;

m.  Assaulting Patrick Casey while intoxicated;

n.  Assaulting a person who was not the aggressor;

o.  Failing to attempt to flee the scene before inflicting excessive force;

p.  Acting unreasonably throughout the altercation

q.  Failing to exercise reasonable care;

r.  Failing to contact the police or medical personnel or otherwise administer first aid;

s.  Failing to await the arrival of police at the scene of the physical altercation;

t.  Evading police apprehension;

u.  Failing to timely turn themselves in to the police;

v.  Leaving the scene of a crime;

w.  Acting negligently *per se* by violating D.C. Code § 25-1001(c) by endangering the safety of another person while intoxicated (a statute that has a public safety purpose and seeks to protect against the injury suffered by Patrick Casey); and,

x.  Causing the pain and suffering, and death of Patrick Casey.

62.  At all relevant times herein, Defendants Jason Ward, Justin Ruark, and Brian

Giblin acted in a joint enterprise with the common purpose of physically harming Patrick Casey and placing him in fear of an imminent physical attack.  Defendants Jason Ward, Justin Ruark, and Brian Giblin each had an equal right to control the manner in which the physical attack and the threat thereof was conducted because each one of the Defendants surrounded Patrick Casey at the door of the restaurant.  Their common purpose was served once Defendant Jason Ward sucker punched Patrick Casey, and Defendants Ward, Giblin, and Ruark fled the scene together.  Further, Defendants Giblin and Ruark assisted Defendant Ward in fleeing the scene of a crime before the Metropolitan Police Department arrived.

63.    Defendants Justin Ruark and Brian Giblin aided and abetted Defendant Ward in committing the violent battery on Patrick Casey.  Specifically, Defendants Ruark and Giblin surrounded Patrick Casey at the door of the McDonalds restaurant  prior to the deadly punch by Jason Ward.  Moreover, at all times during the physical attack on Patrick Casey, Defendants Justin Ruark and Brian Giblin knowingly and substantially assisted Defendant Ward's battery of Patrick Casey by simultaneously threatening, frightening, distracting, pushing, assaulting and/or battering Patrick Casey, which permitted Defendant Jason Ward to deliver the deadly, unexpected "sucker punch."

64.    As a direct and proximate result of the aforementioned negligence, recklessness, and/or intentional conduct of Defendants Jason Ward, Justin Ruark, and Brian Giblin, Patrick Casey suffered serious and debilitating injuries to his head, severe brain trauma, and blunt force trauma to his head that resulted in his death.

65.    As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been caused to incur various funeral, burial, estate administration expenses, and various other expenses related to Patrick Casey's death for which Plaintiffs are entitled to

compensation in these proceedings.

66.     As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Patrick Casey's companionship, guidance, and services.

67.     As a direct and proximate result of Defendants' negligence and malfeasance as set forth above, Patrick Casey's wrongful death beneficiaries suffered, are suffering, and will suffer damages for an indefinite period of time in the future, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contribution they would have received from Decedent, including monies which he would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

68.     WHEREFORE, Plaintiffs demand judgment against these Defendants, jointly and severally and/or separately, for general and special damages, as well as punitive damages pursuant to D.C. Code § 16-2701.

## <u>COUNT II</u>
## WRONGFUL DEATH
### (Defendants Ozio, Camelot, Mighty Pint, Sign of the Whale, and Rumors)

69.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

70.     Plaintiffs bring this action in their own right and on behalf of the wrongful death beneficiaries of Decedent, Patrick Casey, pursuant to D.C. Code § 16-2701.

71.     Defendant Drinking Establishments (Ozio, Camelot, Mighty Pint, Sign of the Whale, and Rumors), by and through the acts and omissions of its agents, servants, workers and employees, in serving alcoholic beverages to the visibly intoxicated Defendants Jason Ward, Justin Ruark, and Brian Giblin, in the course and scope of their employment, violated the statutes

of the District of Columbia and were negligent, negligent per se, careless, willful, wanton, and

reckless in numerous respects including, without limitation:

a. Selling and continuing to sell and serve alcoholic beverages to Defendants Jason Ward, Justin Ruark, and Brian Giblin, when they were visibly intoxicated;

b. Failing to detect that Defendants Jason Ward, Justin Ruark, and Brian Giblin were in a visibly intoxicated condition as a result of their continual serving of alcoholic beverage to them;

c. Selling and continuing to sell and serve alcoholic beverage to Defendants Jason Ward, Justin Ruark, and Brian Giblin, when Defendant Drinking Establishments knew or had reason to know that imbibing of multiple alcoholic beverages by an individual constitutes a risk of harm and renders him dangerous to himself and others by virtue of being in an intoxicated condition.

d. Acting negligently per se by violating the statutes and laws of the District of Columbia, including, but not limited to, D.C. Code § 25-781which prohibits the "consumption of an alcoholic beverage by…(2) an intoxicated person, or any person who appears to be intoxicated; or (3) a person of notoriously intemperate habits";

e. Acting negligently per se by failing to establish, monitor, and/or administer procedures "prevent patrons from becoming intoxicated" as required by D.C.M.R. § 25-402, 25-403 (a regulation that has a public safety purpose and seeks to protect against the injury suffered by Patrick Casey);

f. Having a policy and practice of continuing to serve persons without adequately checking to see whether the person was in fact intoxicated or, exhibited visible signs of intoxication;

g. Failing to have and enforce policies and practices, which include a drink cut-off limit for alcoholic beverages;

h. Failing to have and enforce policies and practices which include a time limit so that Defendant Drinking Establishments' alcohol service personnel and managers would not sell alcohol and/or serve alcohol after patrons had been drinking alcohol for a defined period of time;

i. Having policies and practices to encourage patrons to continue drinking alcohol after they became visibly intoxicated;

j. Allowing Defendants Jason Ward, Justin Ruark, and Brian Giblin to exit Defendant Drinking Establishments facility after they became both intoxicated and visibly intoxicated which posed an unreasonable risk to the three Defendants themselves and to third persons they encountered;

k.  Failing to have a policy or practice of helping intoxicated and visibly intoxicated person sober up before exiting their facility;

l.  Failing to have a policy or practice of helping intoxicated and visibly intoxicated persons reach their homes in safety by providing or facilitating direct transportation or by other means;

m.  Tacitly approving alcohol service personnel and other employees violating the District of Columbia Code by selling and serving alcohol to patrons until they became intoxicated and continuing thereafter to serve them alcohol while visibly intoxicated;

n.  Failing to have or enforce any policy or practice of disciplinary standards for their employees regarding the sale of alcoholic beverages; and

o.  Failing to have or enforce any policy or practice of proactively and effectively monitoring its employees engaged in the serving of alcoholic beverages.

72.     As a direct and proximate result of the carelessness, negligence, negligence per se, and/or intentional conduct of each Defendant Drinking Establishments, Patrick Casey suffered serious and debilitating injuries to his head, severe brain trauma, and blunt force trauma to his head that resulted in his death.

73.     As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been caused to incur various funeral, burial, estate administration expenses, and various other expenses related to Patrick Casey's death for which Plaintiffs are entitled to compensation in these proceedings.

74.     As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been, continue to be, and will in the future wrongfully deprived of Patrick Casey's companionship, guidance, and services.

75.     As a direct and proximate result of Defendant Drinking Establishments' negligence as set forth above, Patrick Casey's wrongful death beneficiaries suffered, are suffering, and will suffer damages for an indefinite period of time in the future, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the

22

contribution they would have received from Decedent, including monies which he would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

76.     WHEREFORE, Plaintiffs demand judgment against these Defendants, jointly and severally and/or separately, for general and special damages, as well as punitive damages pursuant to D.C. Code § 16-2701.

<div align="center">

**COUNT III**
**WRONGFUL DEATH**
**(Defendants McDonald's Corp and M Street McDonald's)**

</div>

77.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

78.     Plaintiffs bring this action in their own right and on behalf of the wrongful death beneficiaries of Decedent, Patrick Casey, pursuant to D.C. Code § 16-2701.

79.     Defendants McDonald's Corp and M Street McDonald's (collectively "McDonald's") – by and through the acts and omissions of its agents, servants, workers, and employees, who were acting in the course and scope of their employment – were careless, negligent, willful, wanton and reckless for breaching their duty to protect their patrons from the criminal acts of third parties.

80.     McDonald's had a duty to protect its patrons from physical assaults because it was highly foreseeable that physical assaults would occur at the restaurant located at 1916 M Street NW, Washington, D.C. during the late evening and early morning hours.  In particular, McDonald's intentionally keeps the restaurant located at 1916 M Street NW, Washington, D.C. opened for twenty-four (24) hours only on Thursday, Friday, and Saturday (the days on which individuals are most likely to visit drinking establishments) to serve customers who have been

<div align="center">23</div>

drinking alcoholic beverages at the many drinking establishments in the immediate vicinity of the restaurant.

81.     Because it is foreseeable that intoxicated persons will act unreasonably and belligerently, the laws of the District of Columbia requires nightclubs to have a security plan that specifically addresses "(A) Conflict resolution training; (B) Procedures for handling violent incidents, other emergencies, and calling the Metropolitan Police Department..."

82.     In the year immediately preceding the assault on Mr. Patrick Casey, there have been at least twenty-two (22) reported incidents of violent crimes within 1000 feet of the Defendant McDonald's restaurant and within Defendant McDonald's restaurant, including four (4) assaults with a dangerous weapon.  Defendants McDonalds were, or should have been, aware of the reported, as well as the unreported, violent crimes in its vicinity and/or occurring at its premises.  McDonald's failed to take reasonable steps to protect its invitees from foreseeable harm caused by third parties.

83.     Given the numerous violent crimes that occurred in the immediate vicinity of the McDonald's restaurant (and within the restaurant itself) in the late evening and early morning hours, coupled with the fact that McDonald's specifically and intentionally caters to customers who are intoxicated, it was highly foreseeable that a patron in the McDonald's restaurant owned by the Defendant M Street McDonald's would be the victim of a physical assault.

84.     McDonald's had notice that failure to provide security or properly train its employees in providing a safe environment for its patrons would foreseeably result in physical assaults at its Restaurants and injuries to its customers.

85.     At all times relevant herein, the McDonald's had a duty to use reasonable care to protect its customers against assaults and/or provide security within its restaurant and within its

chief path of egress.

86.    Defendants McDonald's breached their duty to protect Patrick Casey from being assaulted while dining in the McDonald's restaurant located at 1916 M Street in numerous respects including, without limitation:

      a.   Failing to provide its employees with conflict resolution training;

      b.   Failing to have any procedures in place for handling violent incidents, and/or other emergencies;

      c.   Failing to have any security personnel present at the restaurant;

      d.   Failing to have security procedures in place;

      e.   Endangering the patrons at the restaurant by allowing Defendants Ward, Justin Ruark, and Brian Giblin to enter the restaurant when they were visibly intoxicated and acting belligerently;

      f.   Failing to have a policy or practice to remove visibly intoxicated and/or belligerent patrons from the restaurant;

      g.   Failing to call the Metropolitan Police Department when Defendant Jason Ward attempted to touch the female patron in an inappropriate manner;

      h.   Failing to call the Metropolitan Police Department when Defendants Ward, Justin Ruark, and Brian Giblin initiated the verbal altercation with Patrick Casey's table;

      i.   Failing to call the Metropolitan Police Department when Defendant Giblin followed David Lindsey from the restaurant and then pushed Mr. Lindsey;

      j.   Failing to call the Metropolitan Police Department leading up to and during the time Defendant Jason Ward "sucker punched" Patrick Casey;

      k.   Failing to have security cameras covering the front door and the entrance of the restaurant;

      l.   Failing to provide adequate security for its patrons against assaults;

      m.   Failing to provide adequate lighting in front of the restaurant;

      n.   Failing to adopt security measures and policies where McDonald's had knowledge of prior criminal acts and/or assaults within the restaurant;

      o.   Failing to adopt security measures and policies where McDonald's had knowledge of prior criminal acts and/or assaults in the neighborhood of the restaurant;

p.   Failing to take any actions to defuse the altercation initiated by Defendants Jason Ward, Justin Ruark, and Brian Giblin against Mr. Patrick Casey;

q.   Failing to call 911 after Patrick Casey had been injured on McDonald's' premises;

r.   Failing to provide medical assistance after Patrick Casey had been injured on McDonald's' premises; and

s.   Failing to take any actions to prevent Defendant Jason Ward from "sucker punching" Patrick Casey, which directly and proximately caused the death of Patrick Casey.

87.   M Street McDonald's served as the actual and/or apparent agent for McDonald's Corp. because, *inter alia*, McDonald's Corp. represented to the public, including by virtue of its marketing campaigns, that the McDonald's restaurant located at 1916 M Street NW, Washington, D.C. was owned and operated by McDonald's Corp., third parties (including Mr. Casey) reasonably and naturally relied upon such representations, and Mr. Casey and his family suffered damage as a result of McDonald's actions and omissions.  As the principal, McDonald's Corp. is vicariously liable for the actions and omissions of its agent, M Street McDonald's.

88.   McDonald's Corp. had a duty to use reasonable care in training and supervising the owners, managers, and employees of its franchise restaurants.  McDonald's Corp. breached the duties owed by acting negligently in the following ways, without limitation: (1) failing to establish and supervise the security procedures in place at the M Street McDonald's; (2) failing to properly train the owners and managers in regards to proper security practices, including at times when the restaurant catered heavily to intoxicated individuals; and (3) failing to require the implementation of security practices to protect against assaults and other physical harm at the M Street restaurant.  Such failure to train and supervise amounted to negligence, gross negligence, and/or deliberate indifference or intentional misconduct, and encouraged and/or permitted the employees at the M Street McDonald's to act or fail to act in a manner which proximately and directly caused injuries to Patrick Casey.

26

89.     As a direct and proximate result of the carelessness and negligence and/or intentional conduct of Defendant McDonald's, Patrick Casey suffered serious and debilitating injuries to his head, severe brain trauma, and blunt force trauma to his head that resulted in his death.

90.     As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been caused to incur various funeral, burial, estate administration expenses, and various other expenses related to Patrick Casey's death for which Plaintiffs are entitled to compensation in these proceedings.

91.     As a direct and proximate result of the foregoing, Decedent's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Patrick Casey's companionships, guidance, and services.

92.     As a direct and proximate result of McDonald's  negligence as set forth above, Patrick Casey's wrongful death beneficiaries suffered, are suffering, and will suffer damages for an indefinite period of time in the future, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contribution they would have received from Decedent, including monies which he would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

WHEREFORE, Plaintiffs demand judgment against these Defendants, jointly and severally and/or separately, for general and special damages, as well as punitive damages pursuant to D.C. Code § 16-2701.

## COUNT IV
## SURVIVAL
### (All Defendants)

93.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further allege that this

claim arises under the District of Columbia Survival Statute, D.C. Code § 12-101.

94.     The carelessness, negligence, and recklessness of the Defendants' conduct as well as the intentional acts of assault and battery committed by Defendants Jason Ward, Justin Ruark, and Brian Giblin consist of those acts and omissions set forth in paragraphs 55-68 each of which are incorporated here in this Count against Defendants Jason Ward, Justin Ruark, and Brian Giblin the same as if fully set herein.

95.     The negligent, negligent *per se*, careless and reckless conduct of Defendant Drinking Establishments consist of those acts and omissions set for in paragraph 69-76, each of which are incorporated here in this Count against Defendant Drinking Establishments the same as if fully set herein.

96.     The negligent, negligent *per se*, careless and reckless conduct of Defendants McDonald's consist of those acts and omissions set for in paragraph 77-92, each of which are incorporated here in this Count against Defendants McDonalds the same as if fully set herein.

97.     As a direct and proximate result of the carelessness, negligence, negligence *per se* recklessness, and/or intentional torts of all Defendants as aforementioned, Plaintiff's Decedent, Patrick Casey, suffered considerable pain and suffering prior to his death.

98.     As a direct and proximate result of the carelessness, negligence, negligence *per se*, recklessness, and/or intentional torts of all Defendants as aforementioned, Plaintiff's Decedent, Patrick Casey, suffered considerable mental anguish, fear, and emotional distress prior to his death.

99.     As a direct and proximate result of the carelessness, negligence, negligence *per se*, recklessness, and/or intentional torts of all Defendants as aforementioned, Plaintiff's Decedent, Patrick Casey, suffered a loss wages, both past and future, as well as other noneconomic

damages recoverable under the applicable District of Columbia law.

100.    As a direct and proximate result of the carelessness, negligence, negligence *per se*, recklessness, and/or intentional torts of all Defendants as aforementioned, Plaintiff's Decedent, Patrick Casey, suffered serious and debilitating injuries to his head, severe brain trauma, and blunt force trauma to his head and neck that resulted in his death.

101.    WHEREFORE, Plaintiffs demand judgment against these Defendants, jointly and severally and/or separately, for general and special damages, as well as punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in the form of a judgment against all Defendants, jointly and severally, for compensatory damages, as well as punitive damages, pre and post judgment interest and costs, and attorney's fees.

## JURY AND TRIAL DEMAND

Pursuant to Rule 38, Fed. R. Civ. P., Plaintiff hereby demands a trial by jury with respect to each claim in this Amended Complaint.

<div style="margin-left:40%">

Respectfully submitted,

__/s/ Brendan Klaproth_____
Brendan Klaproth (D.C. Bar No. 999360)
Basyuk & Klaproth LLP
1725 I Street NW, Suite 300
Washington, D.C. 20006
Tel:  202-618-2344
Fax:  202-618-4636
Email: Bklaproth@bklawllp.com

Stephen R. Pickard
Law Offices of Stephen R. Pickard, P.C.
115 Oronoco Street
Alexandria, Virginia 22314
Tel: 703-836-3505
Fax: 703-836-3558
Srpickard@aol.com
*Attorneys for Plaintiffs*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2013, a true and correct copy of the foregoing Amended Complaint was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (ECF) upon the following counsel of record:

Joseph J. Bottiglieri, Esquire
Michael Pivor, Esquire
Bonner Kiernan Trebach & Crociata, LLP
1233 20th Street NW
Suite 800
Washington, D.C. 20036
*Counsel for McDonald's Corporation & Kyung Rhee*

Kevin M. Murphy, Esquire
Erin E. Dorsey, Esquire
Carr Maloney P.C.
2000 L Street, N.W., Suite 450
Washington, D.C. 20036
*Counsel for DC Irish LLC*

D. Stephenson Schwinn, Esquire
Jordan Coyne & Savits, LLP
1100 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036
*Counsel for R A H of Washington, D.C. Inc.*

Dawn E. Boyce, Esq.
Bancroft, McGavin, Horvath & Judkins, P.A.
920 University Drive
Fairfax, VA 22030
*Counsel for Defendant Brian Giblin*

David Drake Hudgins, Esquire
Hudgins Law Firm, P.C.
515 King Street
Suite 400
Alexandria, VA 22314
*Counsel for Justin Ruark*

Janet Marsha Nesse, Esquire
Stinson Morrison Hecker, LLP
1775 Pennsylvania Avenue, NW
Suite 800
Washington, D.C. 20006
*Counsel for 1900 M Restaurant Associates, Inc. d/b/a Rumors Restaurant*

Mark P. Johnson
Gregg E. Viola
Eccleston & Wolf, P.C.
1629 K Street, N.W., Suite 260
Washington, D.C. 20006
*Counsel for Jason Ward*

And pursuant to Pursuant to Rule 4, Fed. R. Civ. P., on:

19th & K, Inc. d/b/a Ozio
1813 M Street NW
Washington, D.C. 20036

Good Life 1831M LLC d/b/a Mighty Pint
1831 M Street NW
Washington, D.C. 20009

Respectfully submitted,

   /s/ Brendan Klaproth
Brendan Klaproth (D.C. Bar No. 999360)
Basyuk & Klaproth LLP
1725 I Street NW
Suite 300
Washington, D.C. 20006
Tel:  202-618-2344
Fax:  202-618-4636
Email: Bklaproth@bklawllp.com