UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL D. CASEY, individually and as )
administrator of the Estate of )
Patrick D. Casey, *et al.*, )
)
Plaintiffs, )
)
v. ) Civil Case No. 13-01452 (RJL)
)
JASON WARD, *et al.*, )
)
Defendants. )

MEMORANDUM OPINION
(September 5, 2014)

[Dkt. ##21, 26, 29, 34, 37, 43, 44, 47, 55, 59, 60, 64, 82]

**FILED**
SEP 0 5 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiffs Paul and Abigail Casey ("plaintiffs")[1] brought this action against

defendants[2] on September 23, 2013, seeking damages under the District of Columbia's

Wrongful Death Act, D.C. Code § 16-2702, and the District of Columbia General

Survival of Tort Actions Act ("Survival Act"), D.C. Code § 12-101, for the death of their

---

[1] Paul Casey brings this action both in his individual capacity as well as in his capacity as administrator of the Estate of Patrick D. Casey. *See* Compl. at 1. Plaintiff Abigail Casey brings this action in her individual capacity only. *See* Compl. at 1.

[2] The defendants in this case are Jason Ward ("Ward"), Justin Ruark ("Ruark"), Brian Giblin ("Giblin"), McDonald's Corporation ("McDonald's"); Kyung Rhee—as owner of the M St. McDonald's—("M St. McDonald's"), 19th & K Inc.—doing business as Ozio—("Ozio"), RAH of Washington, D.C., Inc.—doing business as Camelot—("Camelot"), Good Life 1831 M LLC—doing business as Mighty Pint—("Mighty Pint"), DC Irish LLC—doing business as Sign of the Whale—("Sign of the Whale"), 1900 M Restaurant Associates Inc.—doing business as Rumors Restaurant—("Rumors"), John Does 1-10, and ABC Corporations 1-10 (together "defendants"). *See* Am. Compl. at 1-2. On November 25, 2013, Rumors filed a Suggestion of Bankruptcy [Dkt. #32], resulting in an automatic stay of all proceedings against it. *See* 11

1

son, Patrick Casey ("Casey"). *See* Complaint[3] ("Compl.") [Dkt. #1]; Amended Complaint[4] ("Am. Compl.") [Dkt. #40]. Now before the Court are defendants' motions to dismiss the Amended Complaint.[5] Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court GRANTS Sign of the Whale's Motion to Dismiss the Amended Complaint, Camelot's Motion to Dismiss the Amended Complaint, and Mighty Pint's Motion to Dismiss the Amended Complaint, and GRANTS, in part, McDonald's Motion to Dismiss the Amended Complaint, M St. McDonald's Motion to Dismiss the Amended Complaint, Giblin's Motion to Dismiss the Amended Complaint and Supplemental Motion to Dismiss the Amended Complaint, and Ward's

---

U.S.C. § 362(a).

[3] Defendants Ward, Ruark, McDonald's, M St. McDonald's, and Sign of the Whale filed motions to dismiss plaintiffs' original complaint. *See* Ward Motion to Dismiss [Dkt. #37]; Ruark Motion to Dismiss [Dkt. #34]; McDonald's Motion to Dismiss [Dkt. #26]; M St. McDonald's Motion to Dismiss [Dkt. #29]; Sign of the Whale Motion to Dismiss [Dkt. #21]. These motions, however, "became moot when plaintiff[s] filed [their] First Amended Complaint and therefore will be denied." *Baliterra v. West Va. Bd. of Med.*, 253 F. Supp. 2d 9, 14 (D.D.C. 2003); *see also Anderson v. USAA Cas. Ins. Co.*, 218 F.R.D. 307, 311 (D.D.C. 2003) (denying motions to dismiss original complaint without prejudice where original complaint superseded by amended complaint); *Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) (same). Accordingly, Ward's Motion to Dismiss, Ruark's Motion to Dismiss, McDonald's Motion to Dismiss, M St. McDonald's Motion to Dismiss, and Sign of the Whale's Motion to Dismiss are DENIED, as moot.

[4] Plaintiffs filed their Amended Complaint—as a matter of right—on December 3, 2013. *See* Fed. R. Civ. P. 15(a)(1)(B); *see also* Am. Compl.

[5] *See* Giblin Motion to Dismiss Amended Complaint ("Giblin Mot.") [Dkt. #43]; McDonald's Motion to Dismiss Amended Complaint ("McDonald's Mot.") [Dkt. #44]; M St. McDonald's Motion to Dismiss Amended Complaint ("M St. McDonald's Mot.") [Dkt. #47]; Sign of the Whale Motion to Dismiss Amended Complaint ("Sign of the Whale Mot.") [Dkt. #55]; Camelot Motion to Dismiss Amended Complaint ("Camelot Mot.") [Dkt. #59]; Ward Motion to Dismiss Amended Complaint ("Ward Mot.") [Dkt. #60]; Giblin Supplemental Motion to Dismiss Amended Complaint ("Giblin Suppl. Mot.") [Dkt. #64]; Mighty Pint Motion to Dismiss Amended Complaint ("Mighty Pint Mot.") [Dkt. #82].

2

Motion to Dismiss the Amended Complaint.

## BACKGROUND

All of the claims in this case stem from events leading up to the untimely death of Patrick Casey—the plaintiffs' son—on September 27, 2011. On the evening of September 22, and early morning of September 23, 2011, defendants Ward, Ruark, and Giblin (together "individual defendants") were out drinking on M Street in Northwest Washington, DC. *See* Am. Compl. ¶¶ 23, 30-31, 51. Over the course of the night, the individual defendants visited bars Ozio, Mighty Pint, Sign of the Whale, Rumors, and Camelot (together "bar defendants"), and consumed alcohol at each location. *See id.* Both Sign of the Whale and Mighty Pint were offering various alcoholic drink specials that night. *See* Am. Compl. ¶¶ 25-27, 30. Plaintiffs allege that the individual defendants were "visibly intoxicated," and despite their appearance, each of the bar defendants continued to serve them alcohol. *See* Am. Compl ¶¶ 24, 28-30.

After "bar-hopping" amongst the bar defendants, the individual defendants arrived at defendant M St. McDonald's at approximately 2:21 am. *See* Am. Compl. ¶¶ 30, 33. Shortly thereafter, Casey arrived at the same McDonald's, meeting a group of friends. *See* Am. Compl. ¶ 37. After exhibiting rowdy behavior in line, the individual defendants allegedly engaged in a verbal altercation with Casey and his friends. *See* Am. Compl. ¶¶ 35-36, 38. During the altercation, David Lindsey ("Lindsey")—one of Casey's friends—attempted to leave the McDonald's. *See* Am. Compl. ¶ 39. Gilbin allegedly

pushed Casey aside, chased Lindsey to the door of the restaurant, and pushed him. *See id.*

At that point, Casey followed Lindsey and Giblin and attempted to intervene in order to defuse the situation. *See id.* Plaintiffs allege that the individual defendants surrounded Casey, after which Ward delivered a "sucker punch" to Casey's head, causing him to fall to the ground and strike his head on the concrete sidewalk. *See* Am. Compl. ¶¶ 39-42, 52. The individual defendants immediately fled the scene without alerting the authorities or any medical personnel regarding Casey's condition. *See* Am. Compl. ¶ 45. Casey suffered severe head trauma and brain hemorrhaging, and later died of his injuries at George Washington Hospital on September 27, 2011. *See* Am. Compl. ¶¶ 42, 47, 49, 54. Plaintiffs only became aware of the cause of Casey's injuries, the identities of the defendants, and the evidence of defendants' wrongdoing on March 18, 2013, when the Metropolitan Police Department ("MPD") complied with plaintiffs' Freedom of Information Act ("FOIA") request. *See* Am. Compl. ¶ 53; *see also* Pls.' Opp'n to Giblin Mot. [Dkt. #67] at 17-19.

## STANDARD OF REVIEW

The court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, however, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters

of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion, the court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citation omitted). Factual allegations, however, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the court need not "accept legal conclusions cast in the form of factual allegations," nor "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The court may also dismiss a complaint *sua sponte* when the plaintiff cannot possibly win relief. *See Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990); *see also Pricer v. Deutsche Bank*, 842 F. Supp. 2d 162, 168 (D.D.C. 2012) (dismissing plaintiff's claims *sua sponte* because they were "time-barred" and "cannot possibly win relief") (citing *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994)).[6]

---

[6] All defendants preserved a statute of limitations defense to plaintiffs' wrongful death claims by

## ANALYSIS

I. **Standing**

Defendants challenge plaintiffs' standing to bring wrongful death claims in their individual capacities under the Wrongful Death Act. *See, e.g.*, Ward Mem. of P. & A. ("Ward Mem.") [Dkt. #60-3] at 13-14; McDonald's Mem. of P. & A. ("McDonald's Mem.") [Dkt. #44-1] at 5-6; Camelot Mot. at 2-3; *see also* Am. Compl. at 16, 20, 23 (Counts I-III). The plain text of the Wrongful Death Act makes clear that a cause of action "shall be brought by and in the name of the personal representative of the deceased person." D.C. Code § 16-2702. The term "personal representative," as used in the Wrongful Death Act, is limited to officially appointed executors and administrators, and does not include parents of a decedent, when they do not serve in such an official capacity. *See Saunders v. Air Florida, Inc.*, 558 F. Supp. 1233, 1235 (D.D.C. 1983) (citing *Strother v. District of Columbia*, 372 A.2d 1291, 1296 n.7 (D.C. 1977)).

Although Paul Casey brings this action in both his individual capacity and in his capacity as the administrator of the Estate of Patrick Casey, Abigail Casey brings this action in her individual capacity only. *See* Am. Compl. at 1. Accordingly, Paul Casey is the only plaintiff who meets the standard of "personal representative" under the Wrongful

---

raising that defense in either their respective motions to dismiss the Amended Complaint or their answers to the Amended Complaint. *See* Ward Mot. at 5-12; Ruark Answer to Am. Compl. [Dkt. #57] at 1; Giblin Mot. at 6-7; McDonald's Mot. at 4-5; M St. McDonald's Mot. at 4-5; Ozio Answer to Am. Compl. [Dkt. #58] at 6; Camelot Mot. at 3-5; Mighty Pint Mot. at 7-9; Sign of the Whale Mot. at 3-4. The same is true for all of the individual defendants, with regards to plaintiffs' survival claims based on assault and battery. *See* Ward Mot. at 12-13; Giblin Suppl.

Death Act, and thus the only plaintiff with standing to assert claims pursuant to the Wrongful Death Act. *See* D.C. Code § 16-2702; *Saunders*, 558 F. Supp. at 1235 (citation omitted).

Defendants also challenge plaintiffs' standing to bring claims in their individual capacities under the Survival Act. *See, e.g.*, Ward Mem. at 14; Camelot Mot. at 2-3; Mighty Pint Mot. at 5; *see also* Am. Compl. at 27 (Count IV). Pursuant to the Survival Act, a cause of action survives in favor of a decedent's "legal representative" when that cause of action had accrued to the decedent prior to his or her death.[7] The definition of a "legal representative" under the Survival Act, however, is more expansive than that of "personal representative" under the Wrongful Death Act. Under the Survival Act, the definition of a "legal representative" is any person who "stands in the place of the decedent with respect to his property," and is not intended to "restrict the right to bring a survival action to duly appointed personal representatives, *i.e.*, executors or administrators." *Strother*, 372 A.2d at 1296; *see also Thomas v. Doyle*, 187 F.2d 207, 210 (D.C. Cir. 1950) (citing *N.Y. Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 597 (1886) ("The term 'legal representatives' is not necessarily restricted to the personal representatives of one's deceased, but is sufficiently broad to cover all persons who, with

---

Mot. at 2-3; Ruark Answer to Am. Compl. at 1.
[7] Specifically, the Survival Act states: "On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased." D.C. Code § 12-101.

respect to his property, stand in his place.")).

Although Paul Casey is the only plaintiff to satisfy the standard for "personal representative" under the Wrongful Death Act, both Paul and Abigail Casey satisfy the standard for "legal representative" under the Survival Act, as they are Patrick Casey's heirs-at-law. *See* Pls.' Opp'n to Ward Mot. [Dkt. #66] at 6 n.1 (stating plaintiffs are Patrick Casey's "next of kin"); *see also* D.C. Code § 19-308 ("When the intestate leaves no child, or descendant, the whole is divided equally between the father and mother or their survivor."); *Dickens v. District of Columbia*, 502 F. Supp. 2d 90, 92 (D.D.C. 2007) ("If the decedent left no spouse, domestic partner, or children, the decedent's estate descends to the decedent's parents."). Pursuant to the broad definition of "legal representative," both Paul and Abigail Casey—as Patrick Casey's heirs-at-law—have standing to assert any and all claims that accrued to Patrick Casey prior to his death.[8]

## II. Statute of Limitations

Defendants argue that plaintiffs' wrongful death and assault and battery survival claims are barred by the applicable statutes of limitations. *See, e.g.*, Ward Mem. at 5-13. Plaintiffs' position, however, is that their claims did not accrue until March 18, 2013, and thus their complaint was filed well within the applicable limitations periods. *See*

---

[8] A finding by this Court that plaintiffs are *not* Patrick Casey's heirs-at-law would require an assumption of facts—such as the existence of a wife or child—not supported by anything raised by the defendants in their briefs. In any event, such an assumption would be inconsistent with the standard of review applied at the motion to dismiss stage. Granting plaintiffs "the benefit of all inferences that can be derived from the facts alleged," *Schuler*, 617 F.2d at 608 (internal quotation marks and citation omitted), I am satisfied that both Paul and Abigail Casey are Patrick

8

Am. Compl. ¶¶ 53, 61(t)-(u); Pls.' Opp'n to Ward Mot. at 19-20. As discussed further below, I find that plaintiffs' survival and wrongful death claims accrued on September 23 and September 27, 2011, respectively. As a result, plaintiffs' wrongful death claims and assault and battery survival claims are barred by the applicable statutes of limitations. How so?

## A. Claim Accrual

In their Amended Complaint, plaintiffs claim that March 18, 2013 was the earliest date they "knew, or could have known through the exercise of reasonable diligence" the cause of Patrick Casey's injuries and the wrongdoing by any of the defendants. Am. Compl. ¶ 53. Plaintiffs, however, fail to describe their efforts to obtain such information, and fail explain why such efforts were fruitless. Plaintiffs' legal conclusion that March 18 was the earliest date that they "knew, or could have known through the exercise of reasonable diligence" about the existence of their claims is insufficient to satisfy the required pleading standard set forth in *Iqbal* and *Twombly*. *See* 556 U.S. at 678; 550 U.S. at 555.

Plaintiffs knew or should have known—through the exercise of reasonable diligence—the identity of at least one potential defendant—the M St. McDonald's. In *Estate of Chapelle v. Sanders*, the D.C. Court of Appeals refused to toll the statute of limitations in a wrongful death action where the plaintiffs knew the identity of at least one

---

Casey's heirs-at-law.

of the liable parties. *See* 442 A.2d 157, 159 (D.C. 1982) (noting plaintiff "could have filed a timely claim against [one liable party] and amended it as pretrial discovery revealed the identity of any other liable parties."). "Concealment of the identity of parties liable, or concealment of the parties, has been held not to constitute concealment of the cause of action and not to be available to avoid the running of the statute of limitations." *Id.* at 158 (quoting 51 Am. Jur. 2d *Limitation of Actions*, § 148 (internal quotations marks omitted)). Put simply, plaintiffs' argument here they did not know—and could not have known through the exercise of reasonable diligence—that their son was injured in a fight at the M St. McDonald's is incredible. Accordingly, I find that plaintiffs' survival claims accrued on September 23, 2011 and their wrongful death claims accrued September 27, 2011.[9]

## B.  Wrongful Death Claims

Defendants argue that plaintiffs' wrongful death claims are barred by the statute of limitations in effect at the time of Patrick Casey's death. *See, e.g.*, Ward Mem. at 5-12; McDonald's Mem. at 4-5. The version of the Wrongful Death Act in force at the time of Patrick Casey's death required that plaintiffs file a claim "within one year of the death of the person injured." D.C. Code § 16-2702 (1981).[10] On March 30, 2012, however, the

---

[9] While wrongful death claims accrue upon the decedent's death, survival claims accrue on the date of the decedent's injury, September 23, 2011 here. *See Arrington v. District of Columbia*, 673 A.2d 674 (D.C. 1996) (citing *Estate of Chappelle*, 442 A.2d at 158).

[10] Specifically, the Wrongful Death Statute—as it existed in 2011—stated: "An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person, and within one year after the death of the person injured." D.C. Code § 16-2702 (1981).

10

D.C. Council passed the Wrongful Death Emergency Act, *see* D.C. Act 19-338, 59 D.C. Reg. 2567, and on April 29, 2012 it passed the Wrongful Death Temporary Act of 2012, *see* D.C. Act 19-350, 59 D.C. Reg. 8315, which extended the statute of limitations for wrongful death claims from one year to two years. These two laws were made permanent on October 22, 2012, when the D.C. Council enacted the Wrongful Death Act of 2012. *See* Wrongful Death Act of 2012, D.C. Law 19-177, 59 D.C. Reg. 9353 (codified at D.C. Code § 16-2702 (2012)). Plaintiffs argue that the two-year statute of limitations, as amended by the Wrongful Death Act of 2012, should apply retroactively to their claims, thereby making them timely. *See, e.g.*, Pls.' Opp'n to Ward Mot. [Dkt. #66] at 6-8.

The Supreme Court has made clear that "[s]tatutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 162-63 (1928). Moreover, there is a presumption in this Circuit that—in cases of ambiguity—statutes are applied prospectively, rather than retroactively. *See Gersman v. Grp. Health Ass'n*, 975 F.2d 886, 897 (D.C. Cir. 1992); *D.C. Transit Sys., Inc. v. Pearson*, 149 F. Supp. 18, 23 (D.D.C. 1957). The Wrongful Death Act of 2012 contains no language indicating that the D.C. Council intended for it to apply retroactively to claims accruing before the effective date of the amendment. In fact, quite the opposite. The "Impact on Existing Law" section of

the Judiciary Committee Report to the D.C. Council states that the Wrongful Death Act of 2012 "is intended to be prospective and to have no other effect on existing law." Ward Mot., Ex. 1 [Dkt. #60-4] at 5. Accordingly, the two-year statute of limitations contained in the Wrongful Death Act of 2012 is only applied prospectively, and plaintiffs' wrongful death claims are therefore governed by the one-year statute of limitations in effect at the time of Patrick Casey's death. Plaintiffs filed their Complain nearly two years after the death of their son, and thus their claims are barred by the applicable statute of limitations.

### C. Survival Claims

Plaintiffs' survival claims are based on underlying claims of negligence and assault and battery. *See* Am. Compl. ¶¶ 94-100. The statute of limitations for a claim brought pursuant to the Survival Act is the statute of limitations applicable to the underlying claim, *see Strother*, 372 A.2d at 1296 n.8, and the claim "generally accrues on the date of the decedent's injury, and not on the date of the decedent's death," *Arrington*, 673 A.2d at 677-78 (citation omitted).

Plaintiffs' negligence claim—brought against all defendants—has a three-year statute of limitations in the District of Columbia. *See* D.C. Code § 12-301(8); *Strother*, 372 A.2d at 1296 n.8. The negligence claim underlying plaintiffs' survival action accrued on September 23, 2011, the date of Patrick Casey's injury. Plaintiffs filed their complaint on September 23, 2013—exactly two years after the claim accrued—and thus, their survival claims based on defendants' negligence are timely. Plaintiffs' assault and

battery claim against the individual defendants, however, has a one-year statute of limitations. *See* D.C. Code § 12-301(4). Because the assault and battery claim underlying plaintiffs' survival action also accrued on September 23, 2011, and plaintiffs filed the complaint in this case on September 23, 2013—one year *after* the statute of limitations expired—their survival claims against the individual defendants based on assault and battery are therefore time-barred.

### III. Failure to State a Claim

Finally, the bar defendants argue that plaintiffs have failed to plead sufficient facts to state a claim against them. *See, e.g.*, Camelot Mot. at 5-14; Mighty Pint Mot. at 9-10. I agree.

Under D.C. law, bars are prohibited from serving alcoholic beverages to "[a]n intoxicated person, or any person who appears to be intoxicated." D.C. Code § 25-781(b). While this statute does not create an implied private cause of action, *see Norwood v. Marrocco*, 780 F.2d 110, 111 (D.C. Cir. 1986), the D.C. Court of Appeals has held that "the Alcoholic Beverage Control Act has a public safety purpose, and that its unexcused violation therefore constitutes negligence *per se, i.e.*, breach of the duty of care that tavern keepers owe to the public," *Rong Yao Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268, 1275 (D.C. 1987). Plaintiffs, however, "must [also] prove that the statutory violation was the proximate cause of [the] injuries." *Id.* at 1277; *see also Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997) ("Where an injury is caused by

13

the intervening criminal act of a third party, [the D.C. Court of Appeals] has repeatedly held that liability depends upon 'a more heightened showing of foreseeability' than would be required if the act were merely negligent." (citing *Bailey v. District of Columbia*, 668 A.2d 708, 717 (D.C. 1991)))). Plaintiffs have made no such showing here. Because Casey's death—assuming the truth of plaintiffs' allegations—was caused by the intentional—and unforeseeable—torts of third parties, any connection to the alleged negligence on the part of the bar defendants is too attenuated to support a valid cause of action, and thus plaintiffs' claims against the bar defendants must fail.

## CONCLUSION

Thus, for all the foregoing reasons, the Court GRANTS Sign of the Whale's Motion to Dismiss the Amended Complaint, Camelot's Motion to Dismiss the Amended Complaint, and Mighty Pint's Motion to Dismiss the Amended Complaint, and GRANTS, in part, McDonald's Motion to Dismiss the Amended Complaint, M St. McDonald's Motion to Dismiss the Amended Complaint, Giblin's Motion to Dismiss the Amended Complaint and Supplemental Motion to Dismiss the Amended Complaint, and Ward's Motion to Dismiss the Amended Complaint. Accordingly, the only remaining claims in this case are plaintiffs' negligence survival claims against defendants McDonald's, M St. McDonald's, Ward, Ruark, and Giblin. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge