UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL D. CASEY, individually and as )
administrator of the Estate of )
Patrick D. Casey, *et al.*, )
    )
    )
    Plaintiffs, )
    )
    v. ) Civil Case No. 13-01452 (RJL)
    )
JASON WARD, *et al.*, ) **FILED**
    )
    Defendants. ) **MAY 0 7 2015**

    Clerk, U.S. District & Bankruptcy
MEMORANDUM OPINION    Courts for the District of Columbia

(May 6ᵗʰ, 2015)

[Dkt. ##101, 115, 119, 120, 121, 123, 124]

Plaintiffs Paul and Abigail Casey ("plaintiffs") commenced this action against defendants[1] on September 23, 2013, seeking damages under the District of Columbia Wrongful Death Act, D.C. Code § 16-2701, and the District of Columbia General Survival of Tort Actions Act, D.C. Code § 12-101, for the death of their son, Patrick Casey, on September 27, 2011. *See* Compl. [Dkt. #1]; Am. Compl. [Dkt. #40].

---

1 The original defendants in this case were Jason Ward ("Ward"), Justin Ruark ("Ruark"), Brian Giblin ("Giblin"), McDonald's Corporation, Kyung Rhee—as owner of the M St. McDonald's—("M St. McDonald's"), 19ᵗʰ & K Inc.—doing business as Ozio—("Ozio"), RAH of Washington, D.C., Inc.—doing business as Camelot—("Camelot"), Good Life 1831 M LLC—doing business as Mighty Pint—("Mighty Pint"), DC Irish LLC—doing business as Sign of the Whale—("Sign of the Whale"), 1900 M Restaurant Associates Inc.—doing business as Rumors Restaurant—("Rumors"), John Does 1-10, and ABC Corporations 1-10 (collectively, "defendants"). *See* Amended Complaint ("Am. Compl.") at 5-9 [Dkt. #40]. On November 25, 2013, Rumors filed a Suggestion of Bankruptcy [Dkt. #32], resulting in an automatic stay of all

1

Presently before the Court is plaintiffs' Rule 54(b) Motion for Reconsideration of this Court's September 5, 2014 Memorandum Opinion and Order dismissing Counts I, II, and III ("Wrongful Death Act Claims") as to all defendants, and dismissing Count IV ("Survival Act Claims") as to defendants Sign of the Whale, Camelot, Ozio, Rumors, and Mighty Pint (together, "bar defendants"). See Pls.' Mot. for Recons. and Req. for Hr'g ("Pls.' Mot.") [Dkt. #101]. Defendants oppose this motion. See [Dkt. ##102, 104, 105, 106, 107, 108]. After careful review of the pleadings, the relevant law, and the entire record in this case, plaintiffs' motion is DENIED.[2]

For the sake of economy, the Court assumes familiarity with the factual and procedural history of this case and addresses only the legal arguments raised in plaintiffs' Motion. Under Rule 54(b) of the Federal Rules of Civil Procedure, courts may revise their interlocutory orders "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsideration is available "as justice requires," in cases where the Court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or

---

proceedings against it. See 11 U.S.C. § 362(a). The parties stipulated to defendant Ruark's dismissal from this action on September 23, 2014. Stipulation of Dismissal [Dkt. #103].

[2] As a result of the Court's holding, an enlargement of the discovery deadline is unnecessary and the parties' Consent Motion to Modify the Scheduling Order [Dkt. #115] is also DENIED. Furthermore, defendants' Motions for Entry of a Protective Order [Dkt. ##119, 120, 123, 124] are rendered unnecessary by the Court's ruling and are, accordingly, DENIED as moot. Finally, and for the same reason, nonparty International Golden Foods, LLC's Motion for Entry of a Protective Order [Dkt. #121] is DENIED as moot.

significant change in the law or facts [has occurred] since the submission of the issue to the court." *Johnson–Parks v. D.C. Chartered Health Plan,* 806 F. Supp. 2d 267, 268-69 (D.D.C. 2011) (quoting *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran,* 772 F. Supp. 2d 218, 223 (D.D.C. 2011) (alteration in original)). Relief of this nature is discretionary and is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.,* 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted). Unfortunately for plaintiffs, I find that reconsideration is unwarranted and decline to reinstate plaintiffs' claims.

Plaintiffs ascribe two errors to the Court's partial dismissal of their case. Plaintiffs first contend that "[t]he Court misapprehended" their arguments in support of applying a two-year statute of limitations to their Wrongful Death Act Claims. *See* Pls.' Stmt. of P. & A. in Supp. of Pls.' Mot. for Recons. and Req. for Hr'g ("Pls.' Mem.") at 3-7 [Dkt. #101-1]. Plaintiffs are mistaken. As the Court pointed out in its September 5, 2014 Memorandum Opinion ("Opinion"), at the time of Patrick Casey's death in September 2011, wrongful death actions were governed by a one-year statute of limitations. *See* Mem. Op. at 10 n.10 [Dkt. #98] (quoting D.C. Code § 16-2702 (1981)). On March 30, 2012, the D.C. Council passed the Wrongful Death Emergency Act, *see* D.C. Act 19-338, 59 D.C. Reg. 2567, and shortly thereafter, on April 29, 2012, the

Wrongful Death Temporary Act of 2012, *see* D.C. Act 19-350, 59 D.C. Reg. 8315. Both Acts enlarged the applicable statute of limitations from one to two years.[3] In determining whether this enlargement salvages plaintiffs' claims, the Court followed the well-settled "presumption against retroactive legislation." *Landgraf v. USI Film*, 511 U.S. 244, 265 (1994). Equally mindful of the Supreme Court's dictate that the "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment," the Court inquired whether the D.C. Counsel had "expressly prescribed the statute's proper reach." *See id.* at 280. It plainly had. As the Court pointed out in its Opinion, the D.C. Committee Report explicitly stated that the enlargement was intended to be "prospective." *See* Mem. Op. at 11-12. Plaintiffs' apparent quarrel, then, is with the meaning of the word "prospective." Plaintiffs urge the Court to construe "prospective" in a manner that, if credited, would apply the enlarged two-year statute of limitations to wrongful death actions that were *unexpired* as of March 30, 2012, regardless of when the underlying claims accrued.[4] *See* Pls.' Mem. at 4. By

---

[3] These laws were made permanent on October 22, 2012, when the D.C. Counsel enacted the Wrongful Death Act of 2012. *See* Wrongful Death Act of 2012, D.C. Law 19-177, 59 D.C. Reg. 9353 (codified at D.C. Code § 16-2702 (2012)).

[4] Plaintiffs rely heavily on *Wilson v. Pena*, 79 F.3d 154 (D.C. Cir. 1996) to support their argument. *See* Pls.' Mem. at 4-6. Plaintiffs failed, as an initial matter, to present this case in their initial briefs. Their attempt to invoke it now violates the maxim that motions for reconsideration cannot be used "as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011) (internal quotation marks omitted). *Wilson* pertains, in any event, to an entirely different situation than the one at bar. In *Wilson*, the court applied an amended statute of limitations to the plaintiff's claims because those claims had not vested before the date of the statutory enlargement. *See Wilson*, 79 F.3d at 162. The court in *Wilson* was careful,

seeking to apply a prospective statute retroactively, the plaintiffs have in essence conflated two distinct principles. The Court considered—and rejected—such an approach, finding that a prospective two-year statute of limitations applies only to claims that, unlike plaintiffs', *accrued* on or after March 30, 2012. *See* Mem. Op. at 12. Plaintiffs' Wrongful Death Claims are thus barred by the one-year statute of limitations in effect on September 27, 2011. *See* Mem. Op. at 12. Plaintiffs, of course, are free to disagree with the Court's reasoning. But because the Court is not persuaded that it misapprehended either plaintiffs' arguments or the applicable law, it declines to reconsider its dismissal of plaintiffs' Wrongful Death Act Claims.

Plaintiffs next assert that reconsideration is appropriate because the Court misapplied D.C. law governing their Survival Act Claims against the bar defendants. *See* Pls.' Mem. at 10-14. Qualms with the Court's logic, however, are not fertile grounds for reconsideration. *See Singh*, 383 F. Supp. 2d at 101 (noting that purported errors of reasoning are not valid arguments for reconsideration). Plaintiffs' arguments are, nonetheless, unavailing, because they misconstrue both the Court's holding and the

---

moreover, to cabin its holding to "a limited class of complainants" to which plaintiffs in this action do not belong. *See id.* at 163 n.4. Plaintiffs' reliance on *Davis v. District of Columbia*, No. 2005 CA-8772 B, 2010 D.C. Super. LEXIS 6 (D.C. Super. Ct. Nov. 23, 2010) and *Sharma v. District of Columbia*, 791 F. Supp. 2d 207 (D.D.C. 2011) is similarly misplaced. *See* Pls.' Mem. at 5-6. Those cases concern amendments to the D.C. Whistleblower Protection Act's ("DCWPA") statute of limitations. Significantly, and unlike the Wrongful Death Act of 2012, the amendments to the DCWPA's statute of limitations were intended by the legislature "to apply retroactively." *See Sharma*, 791 F. Supp. 2d at 212 ("[T]he committee report [on the 2010 DCWPA Amendments] is clear . . . that the statute is to apply retroactively." (internal quotation marks omitted)). As such, those cases have no bearing on the issue at hand.

5

relevant case law. Nowhere in its Opinion did the Court dispute that drinking establishments can, as a general matter, be held liable for the actions of their intoxicated patrons. To the contrary, the Court invoked D.C. precedent endorsing the view that drinking establishments may, in certain circumstances, be held liable for violations of the Alcoholic Beverages Control Act. *See* Mem. Op. at 13. The question before the Court was whether *these particular drinking establishments* are liable for the acts of their patrons. To prevail, it was incumbent on plaintiffs to adequately plead that the defendants' actions—serving alcohol to defendants Ward and Giblin— proximately caused Casey's death.[5] *See* Mem. Op. at 13-14. This, they did not do. Plaintiffs fault the Court's conclusion but present no authority, statutory or otherwise, forbidding courts from deciding issues of causation where, as here, the injury was temporally—and causally—remote from the actions of the alleged tortfeasors. Quite the opposite is true.

---

[5] Plaintiffs also take issue with the Court's reference to case law requiring a heightened standard of foreseeability when a party's injury is caused in part intervening criminal acts. *See* Pls.' Mem. at 12-14. Once again, plaintiffs confuse the proposition that D.C. courts have "never" required heightened foreseeability in dram shop actions with the principle that such a standard is inappropriate. *See* Pls. Mem. at 12. It most assuredly is not. As the Court pointed out in its Opinion, the Alcoholic Beverage Control Act does not create a private right of action—it instead supplies the "duty of care the tavern keepers owe to the public," the breach of which "constitutes negligence *per se*." *See* Mem. Op. at 13 (quoting *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1275 (D.C. 1987)). Plaintiffs' action is therefore governed by general concepts of negligence liability, under which liability for injuries "caused by the intervening criminal act of a third party . . . depends upon a more heightened showing of foreseeability." *See Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997) (internal quotation marks omitted); *see also Romero v. Nat'l Rifle Ass'n of Am., Inc.*, 749 F.2d 77, 83 (D.C. Cir. 1984) ("[C]ivil liability for the intervening, independent criminal acts of third parties is extraordinary, and District of Columbia courts, in their development of common-law tort rules, have imposed especially stringent requirements to support it.").

*See, e.g., De Los Rios v. NationsBank, N.A.*, 911 F. Supp. 8, 10 n.2 (D.D.C. 1995) ("Where it is clear that reasonable men could draw but one conclusion from the facts alleged . . . proximate cause becomes an issue for the Court." (internal quotation marks omitted)); *Sanders v. Wright*, 642 A.2d 847, 849 (D.C. 1994) (stating that the question of proximate cause "becomes [a question] of law . . . when the evidence adduced at trial will not support a rational finding of proximate cause" (internal quotations marks omitted)). Justice does not require reconsideration of this issue and, accordingly, I decline to revise my ruling.

## CONCLUSION

Thus, for all the foregoing reasons, the Court DENIES plaintiffs' Motion for Reconsideration and DENIES the parties' Consent Motion to Modify the Scheduling Order. In addition, the Court DENIES, as moot, the Motions for Entry of a Protective Order filed by defendants Ward, Giblin, McDonald's Corporation, and Rhee, and further DENIES, as moot, nonparty International Golden Foods LLC's Motion for Entry of a Protective Order. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge